UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

JAMES REGNANTE,

                          Plaintiff,

           v.

SECURITIES AND EXCHANGE OFFICIALS,
*et al.*,

                      Defendants.

------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:
:
:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>September 28, 2015</u>

14 Civ. 4880 (KPF)

<u>OPINION AND ORDER</u>

KATHERINE POLK FAILLA, District Judge:

      The parties to this litigation agree on certain underlying facts:  The case

stems from an accounting scandal involving AgFeed Industries, Inc. ("AgFeed"),

and, more specifically, AgFeed's agricultural operations in China.  Investigation

into these accounting irregularities culminated in a March 2014 enforcement

action brought against AgFeed by the Securities and Exchange Commission

(the "SEC" or "Commission"), which, in turn, yielded an $18 million

disgorgement penalty (the "AgFeed Sanction").  After AgFeed sought protection

in the Bankruptcy Court, the AgFeed Sanction was disbursed through the

company's court-approved reorganization plan.

      It is here that the parties diverge.  Plaintiff James Regnante claims that

pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act

("Dodd-Frank" or "Act"), Pub. L. No. 111-203, Title IX, § 922(a), 124 Stat. 1376,

1841 (2010)[1], the AgFeed Sanction should have been deposited into the Securities and Exchange Commission Investor Protection Fund (the "Fund"), rather than distributed in connection with the bankruptcy proceeding.  More importantly, Plaintiff claims that because of information that he provided to the SEC regarding AgFeed, he is entitled to an award under the whistleblower program established by Dodd-Frank.  Relatedly, Plaintiff contends that certain official SEC notices regarding the whistleblower program in general, and the AgFeed action in particular, were misleading.

In June 2014, Regnante filed the instant action against various "Securities and Exchange Commission Officials ... to be later named."  He subsequently amended the complaint to name Mary Jo White, Andrew Calamari, Patricia Schrage, and Neal Jacobson (collectively, "Defendants"), who are, respectively, the Chairman of the SEC, the Director of the SEC's New York Regional Office, and two senior attorneys at that office.[2]  The Amended Complaint recites claims against Defendants in their "individual and personal capacities" for: (i) violations of both Dodd-Frank and the Fifth Amendment (Count One); (ii) misrepresentations, concealment, and deceit (Count Two); (iii) unjust enrichment (Count Three); and (iv) attorney's fees (Count Four).

---

[1]     Section 922(a) of Dodd-Frank added Section 21F to the Securities Exchange Act of 1934, and codified this amendment at 15 U.S.C. § 78u-6.

[2]     The undersigned served as an Assistant United States Attorney under Defendant White for two years, from 2000 until 2002.  Because the Amended Complaint contains no allegations specific to Defendant White, and because the bases of dismissal are legal grounds that would appear to exist irrespective of which SEC representatives were named as defendants, the undersigned does not perceive a basis for her recusal.

Defendants have moved to dismiss the Amended Complaint in its entirety.  For the reasons set forth in this Opinion, the motion to dismiss is granted.

## BACKGROUND[3]

### A.   Factual Background

#### 1.   The AgFeed Enforcement Action and Its Resolution

AgFeed was a publically traded agricultural company that maintained operations in both the United States and China.  (Am. Compl. ¶ 7).  Plaintiff alleges that he notified the SEC, as far back as January 2013, that AgFeed "was a fraud."  (*Id.* at ¶ 8).  He further claims that, at his instigation, the SEC launched an investigation into AgFeed, and that from January through March 2013, he provided the Commission with "original information" that enhanced its inquiry.  (*Id.* at ¶¶ 8, 10).

On March 11, 2014, the SEC filed an enforcement action (the "Enforcement Action") against AgFeed and six of its officers, alleging that the defendants had reported fictitious revenues from the company's China operations.  (Am. Compl. ¶ 9).  Ultimately, the Enforcement Action was resolved

---

[3]    The facts set forth herein are drawn from the Amended Complaint ("Am. Compl.") (Dkt. #17), and the exhibits thereto; the exhibits attached to the Declaration of Rebecca S. Tinio ("Tinio Decl."); as well as matters of public record of which the Court may permissibly take judicial notice under Federal Rule of Evidence 201.  *See Rothman* v. *Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (stating that a court resolving a motion to dismiss may consider the facts alleged in the complaint, together with "any statements or documents incorporated in it by reference, as well as ... documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit" (internal citations omitted)); *accord Littlejohn* v. *City of New York*, 795 F.3d 297, 303 n.1 (2d Cir. 2015).

For convenience, Defendants' opening brief (Dkt. #28) is referred to as "Def. Br."; Plaintiff's opposition (Dkt. #36) as "Pl. Opp."; and Defendants' reply brief (Dkt. #37) as "Def. Reply."

when the SEC and AgFeed entered into a settlement in September 2014, pursuant to which the company agreed to pay the $18 million AgFeed Sanction in disgorgement.  (*See id.* at ¶ 11; Tinio Decl., Ex. B).  *See generally SEC* v. *AgFeed Indus.*, *Inc.*, No. 14 Civ. 663 (M.D. Tenn.).  Plaintiff claims that without his information, the SEC would not have obtained the AgFeed Sanction in the Enforcement Action.  (Am. Compl. ¶ 16).

### 2.      The AgFeed Bankruptcy

Prior to the Enforcement Action, but after Plaintiff is alleged to have alerted the SEC to AgFeed's fraud, AgFeed and a related entity filed for Chapter 11 protection in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Case").  (*See* Am. Compl. ¶ 10).  *See generally In re AgFeed USA LLC*, No. 13-bk-11761 (BLS) (Bankr. D. Del.).  On November 4, 2014, the bankruptcy court confirmed the Revised Second Amended Chapter 11 Plan (the "Plan"), one provision of which permitted a claim by the SEC against AgFeed in the $18 million amount of the AgFeed Sanction.  (*See* Tinio Decl., ¶ 3 and Ex. A).  The Plan also provided a mechanism for distributing the AgFeed Sanction to various parties and to an SEC Fairness Fund.  (Tinio Decl., Ex. A at 1-2).

### 3.      The Dodd-Frank Whistleblower Program

Among other things, Dodd-Frank established the Fund to compensate participants in the Act's newly formed whistleblower program.  (Am. Compl. ¶ 15; *see* 15 U.S.C. § 78u-6).  Plaintiff avers that pursuant to Dodd-Frank, Defendants were required to deposit the AgFeed Sanction into the Fund.  (Am.

Compl. ¶ 12).[4]  Although not entirely clear from the face of the Amended

Complaint, Plaintiff appears to allege that the distribution of the AgFeed

Sanction through the Plan in the Bankruptcy Case was an "unlawful diversion"

from the Fund that "benefits lawyers at the expense" of whistleblowers.  (*Id.* at

¶ 13).  In other words, Plaintiff asserts that Defendants improperly placed the

AgFeed Sanction into "funds [that lawyers] control" — presumably through the

distribution mechanisms established in the Plan — rather than the Fund.  (Pl.

Opp. 12).[5]  Plaintiff reported this alleged malfeasance to the SEC on three

---

[4]     For purposes of this motion, the Court will assume that Defendants can be charged
with the decision to disburse the AgFeed Sanction pursuant to the Plan, rather than
deposit it in the Fund.  In this regard, Defendants note in their supporting
memorandum of law (*see* Def. Br. 4-5) that § 78u-6(g) specifically provides that
sanctions (such as the AgFeed Sanction) need not be deposited in the Fund in certain
circumstances:

> There shall be deposited into or credited to the Fund an amount
> equal to —
>
> (i) any monetary sanction collected by the Commission in any
> judicial or administrative action brought by the Commission under
> the securities laws that is not added to a disgorgement fund or
> other fund under section 308 of the Sarbanes-Oxley Act of 2002
> (15 U.S.C. 7246) or otherwise distributed to victims of a violation
> of the securities laws, or the rules and regulations thereunder,
> underlying such action, *unless the balance of the Fund at the time
> the monetary sanction is collected exceeds $300,000,000*;
>
> (ii) any monetary sanction added to a disgorgement fund or other
> fund under section 308 of the Sarbanes-Oxley Act of 2002 (15
> U.S.C. 7246) that is not distributed to the victims for whom the
> Fund was established, *unless the balance of the disgorgement fund
> at the time the determination is made not to distribute the monetary
> sanction to such victims exceeds $200,000,000*[.]

15 U.S.C. § 78u-6(g)(3)(A) (emphases added).  Defendants further note that, according
to the 2014 SEC Annual Report, the balance of the Fund was nearly $438 million.  (Def.
Br. 5).  However, as discussed in footnote 3 above, the Court is limited in what it may
consider in the motion to dismiss context, and it therefore declines to consider the
Annual Report at this time.

[5]     On a motion to dismiss, this Court "may consider factual allegations made by a *pro se*
party in his papers opposing the motion."  *Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d
Cir. 2013).  The Court may also consider the statements in a *pro se* plaintiff's legal
memorandum for purposes of supplementing and clarifying the allegations in the

separate occasions, and even endeavored to alert the President of the United States to the purported improprieties involving the AgFeed Sanction.  (Am. Compl. ¶¶ 14, 18).

Plaintiff also alleges that as a consequence of a number of public statements from the SEC, which he attributes to Defendants in this litigation, Plaintiff believed that he was entitled to a monetary award under the Dodd-Frank whistleblower program.  (Am. Compl. ¶ 28).  According to Plaintiff, notwithstanding the SEC's public statements, Defendants "had no intentions of paying Plaintiff any award."  (*Id.*).  Significantly, however, Plaintiff does not allege that he has filed a claim for a whistleblower award pursuant to the procedures set forth in Dodd-Frank and its implementing regulations, nor does he allege that any claim for an award has been rejected by the SEC.  Instead, Plaintiff hopes through this litigation to effect the transfer of the AgFeed Sanction to the Fund, after which Plaintiff intends to "file[] a claim against the Fund and collect 30% of the $18 million dollars, which will amount of $5,460,000, if eligible."  (*Id.* at ¶ 23).

## B.    Procedural Background

Plaintiff commenced this action on June 30, 2014.  (Dkt. #1).  He filed the Amended Complaint, the operative pleading, on November 14, 2014.  (Dkt. #17).  The gravamen of the Amended Complaint concerns the application of Dodd-Frank's whistleblower program to the AgFeed Sanction, from which

---

complaint.  *See Sommersett* v. *City of New York*, No. 09 Civ. 5916 (LTS) (KNF), 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011).

Plaintiff discerns four separate causes of action.  Count One alleges violations of the Fifth Amendment as well as Dodd-Frank and its associated regulations. These violations are premised on Defendants' failure to transfer the AgFeed Sanction to the Fund and Plaintiff's contention that he is entitled to a whistleblower award.  (Am. Compl. ¶ 25).  Count Two asserts that Defendants misrepresented material facts, concealed material facts, and engaged in deceit. Specifically, Plaintiff alleges that Defendants "[through] public advertisements falsely and deliberately misrepresented and deceived the Plaintiff into believing that an award awaits him if he complie[d] with the Whistleblower laws[.]"  (*Id.* at ¶¶ 27-28).  Count Three is styled as a claim for unjust enrichment, by which Plaintiff claims that Defendants "unjustly enrich[ed] the lawyers involved in the Agfeed case at the expense of Plaintiff."  (*Id.* at ¶ 30).  Finally, Count Four seeks attorney's fees pursuant to 42 U.S.C. § 1988.  (*Id.* at ¶ 32).

On February 18, 2015, Defendants filed the instant motion to dismiss. (Dkt. #27-30).  Plaintiff filed his opposition on April 28, 2015.  (Dkt. #36).  The motion was fully submitted on May 20, 2015, when Defendants filed their reply.  (Dkt. #37).

## DISCUSSION

### A.    Motions to Dismiss Under Fed. R. Civ. P. 12

#### 1.    Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  *Durant, Nichols, Houston, Hodgson &*

7

*Cortese-Costa, P.C.* v. *Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted).  In that regard, "a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it."  *Aurecchione* v. *Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted); *accord Solowski* v. *Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013).  A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000).

In resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison* v. *Nat'l Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation and quotation marks omitted).  Moreover, where subject matter jurisdiction is contested, a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.  *See Zappia Middle East Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."); *accord Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("[W]here

8

jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.").

### 2.    Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

Nevertheless, "[c]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson,* 89 F.3d 75, 79 (2d Cir. 1996)); *accord McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). "That said, the liberal pleading standard accorded to *pro se* litigants is not without limits, and all normal rules of pleading are not absolutely suspended." *Hill* v. *City of New York*, No. 13 Civ. 8901 (KPF), 2015 WL 246359, at *2 (S.D.N.Y. Jan. 20, 2015) (internal quotation marks omitted).

## B.     Plaintiff's Dodd-Frank Claims Must Be Dismissed

### 1.     Applicable Law

Not every federal statute creates a private cause of action. *See Gonzaga Univ.* v. *Doe*, 536 U.S. 273, 285-86 (2002); *see generally Jordan* v. *Chase Manhattan Bank*, No. 13 Civ. 9015 (PAE), — F. Supp. 3d —, 2015 WL 1000058, at *5 (S.D.N.Y. Mar. 6, 2015) (collecting cases). Accordingly, "[t]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon* v. *Univ. of Chicago*, 441 U.S. 677, 688 (1979). Instead, Congress must establish a private cause of action that allows a party to enforce the rights and obligations embodied in a federal law. *Alexander* v. *Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress.").

A federal statute can create a private cause of action expressly or by implication. *Republic of Iraq* v. *ABB AG*, 768 F.3d 145, 170 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2836 (2015). However, claims that a particular statute creates an implied private cause of action are viewed with "increasing disfavor" by the Supreme Court. *Id.* (quoting *Hallwood Realty Partners, L.P.* v. *Gotham Partners, L.P.*, 286 F.3d 613, 618 (2d Cir. 2002)). Accordingly, where a statute fails to specify a private cause of action, there is a presumption that Congress did not intend to create such a right. *See Bellikoff* v. *Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) ("Here, no provision of the ICA explicitly provides a private right of action for violations of §§ 34(b), 36(a), or 48(a). Thus, we begin with the presumption that Congress did not intend one."); *Jordan*, 2015 WL 1000058, at *5 ("As the Court has explained, where a statute does not explicitly provide for a private right of action, 'we begin with the presumption that Congress did not intend one.'" (quoting *Bellikoff*, 481 F.3d at 116)).

The linchpin of an implied private cause of action is Congressional intent. *See Sandoval*, 532 U.S. at 286-87; *Lindsay* v. *Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 52 (2d Cir. 2009). To this end, a court can only find an implied cause of action where "the underlying statute can be interpreted to disclose the intent to create one." *Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta*, 552 U.S. 148, 164 (2008). The key is ascertaining whether the statute "'displays an intent to create not just a private right but also a private remedy.'" *Republic of Iraq*, 768 F.3d at 170 (quoting *Sandoval*, 532 U.S. at 286). Congressional intent is gleaned by "'look[ing] first to the text and structure of

the statute.'"  *Republic of Iraq*, 768 F.3d at 170 (quoting *Lindsay*, 581 F.3d at

52).  Ultimately, the statute's text and structure must "yield a clear

manifestation of congressional intent to create a private cause of action before

a court can find such a right to be implied."  *Lopez* v. *Jet Blue Airways*, 662

F.3d 593, 596 (2d Cir. 2011).

A court's analysis of Congressional intent is guided by the four-factor

test outlined by the Supreme Court in *Cort* v. *Ash*, 422 U.S. 66 (1975).  *See*

*Lindsay*, 581 F.3d at 53 n.3 ("[W]e apply the[] [*Cort*] factors to illuminate our

analysis of congressional intent."); *Hallwood Realty Partners, L.P.*, 286 F.3d at

619 n.7 ("As this circuit has explained, the remaining *Cort* factors (other than

congressional intent) now enter into the analysis only as possible indicia for

legislative intent.").  These factors pose the following questions:

> First, is the plaintiff one of the class for whose especial
> benefit the statute was enacted — that is, does the
> statute create a federal right in favor of the plaintiff?
> Second, is there any indication of legislative intent,
> explicit or implicit, either to create such a remedy or to
> deny one?  Third, is it consistent with the underlying
> purposes of the legislative scheme to imply such a
> remedy for the plaintiff?  And finally, is the cause of
> action one traditionally relegated to state law, in an area
> basically the concern of the States, so that it would be
> inappropriate to infer a cause of action based solely on
> federal law?

*Lindsay*, 581 F.3d at 52 (quoting *Cort*, 422 U.S. at 78) (internal citations and

quotation marks omitted in *Lindsay*).

### 2.   Analysis

Liberally construing the Amended Complaint, the Court identifies two

putative violations of Dodd-Frank.  First, Plaintiff claims that disbursing the

AgFeed Sanction through the Bankruptcy Case violated 15 U.S.C. § 78u-6(g)(3), which requires the SEC to deposit enforcement penalties into the Fund. (Am. Compl. ¶ 25). Second, albeit less precisely, Plaintiff asserts that he was improperly denied a whistleblower award in violation of Dodd-Frank. (*Id.*). For the reasons explained more fully below, the Court must dismiss both of these claims.

### a.   There Is No Private Cause of Action to Enforce the Procedures for Administering the Fund

Among other things, Dodd-Frank: (i) created the Fund, 15 U.S.C. § 78u-6(g)(1); (ii) mandates that the sanctions collected by the SEC "be deposited into or credited to the Fund" when certain conditions are satisfied, *id.* § 78u-6(g)(3); and (iii) directs the SEC to use the Fund to pay whistleblower awards and fund the activities of the Commission's Inspector General, *id.* § 78u-6(g)(2).[6] Neither side has identified any specific statutory language that creates a private cause of action allowing individuals to enforce the provisions of Dodd-Frank relating to the SEC's administration of the Fund, including § 78u-6(g)(3). The Court's own independent review has similarly failed to unearth any statutory language to that effect. Accordingly, in the absence of any provision explicitly providing for a private cause of action, the Court begins "with the presumption that Congress did not intend one." *Bellikoff*, 481 F.3d at 116; *see also Cohen* v. *Viray*, 622 F.3d 188, 193 (2d Cir. 2010) ("The statute makes no explicit provision of a private cause of action for violations of § 304. We therefore

---

[6]   The procedures for seeking and obtaining a whistleblower award under Dodd-Frank are discussed later in this Opinion. *See* Discussion Sec. C(2)(b).

presume that Congress did not intend to create one."); *Olmsted* v. *Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 432 (2d Cir. 2002) ("No provision of the ICA explicitly provides for a private right of action for violations of either § 26(f) or § 27(i), and so we must presume that Congress did not intend one.").

To overcome this presumption, Plaintiff must demonstrate that Congress intended to create an implied private cause of action. *See Cohen*, 622 F.3d at 193. The specific provision of Dodd-Frank under which Plaintiff seeks redress directs that, subject to certain limitations, "there shall be deposited into or credited to the Fund an amount equal to" any "monetary sanction" the SEC recovers. 15 U.S.C. § 78u-6(g)(3)(A)-(B). On its face, this section does not contain "rights-creating language." *Hallwood Realty Partners, L.P.*, 286 F.3d at 619; *see also Olmsted*, 283 F.3d at 432 (observing that statutes did not contain rights-creating language). Rather, this provision of Dodd-Frank is properly understood as providing a directive to a federal agency. Where a statute is phrased as a prohibition or command to a federal agency, courts have been skeptical of claims that Congress intended to create an implied private cause of action. *See Univs. Research Ass'n, Inc.* v. *Coutu*, 450 U.S. 754, 772 (1981) (noting "that there 'would be far less reason to infer a private remedy in favor of individual persons' where Congress, rather than drafting the legislation 'with an unmistakable focus on the benefited class,' instead has framed the statute simply as a general prohibition or a command to a federal agency" (quoting *Cannon*, 441 U.S. at 690-92)); *Shah* v. *New York State Office of Mental Health*, 523 F. App'x 828, 831 (2d Cir. 2013) (summary order) ("'Statutory provisions

14

that are phrased as general prohibitions or commands to federal agencies are unlikely to give rise to private rights of action[.]'" (quoting *Thye* v. *United States*, 109 F.3d 127, 129 (2d Cir. 1997))).[7]

Further support for the Court's conclusion that no private cause of action for violations of 15 U.S.C. § 78u-6(g)(3) was implied can be found in a different section of Dodd-Frank, namely, 15 U.S.C. § 78u-6(f). This provision provides parties (including private actors) with a limited right to appeal from "any determination made under this section, including whether, to whom, or in what amount to make awards" to the "appropriate court of appeals of the United States." *Id.*[8] When a statute provides a limited right of review, as in § 78u-6(f), courts have concluded that Congress did not intend to imply a broader-based private cause of action. *See Lopez*, 662 F.3d at 598 (concluding that a "limited right of review of an administrative decision suggests that

---

[7]    *Cf. Armstrong* v. *Exceptional Child Center*, Inc., 135 S. Ct. 1378, 1387 (2015) (Part IV of Opinion, for which there was a plurality of votes):

> The last possible source of a cause of action for respondents is the Medicaid Act itself. They do not claim that, and rightly so. Section 30(A) lacks the sort of rights-creating language needed to imply a private right of action. It is phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the State's decision to participate in Medicaid.

*Id.* (internal citation omitted).

[8]    Although this issue was not briefed by the parties, 15 U.S.C. § 78u-6(f) also conceivably strips this Court of jurisdiction to consider any claim that the disposition of the AgFeed Sanction violated 15 U.S.C. § 78u-6(g)(3). As noted, § 78u-6(f) applies to "*any determination* made under *this section*, including whether, to whom, or in what amount to make awards[.]" 15 U.S.C. § 78u-6(f) (emphasis added). The Dodd-Frank provisions relating to the deposit of penalties into the Fund arises under the "section" referred to in § 78u-6(f). Moreover, the decision concerning where to deposit funds recovered by an enforcement action is arguably a "determination" within the meaning of § 78u-6(f). As such, only a Court of Appeals would have jurisdiction to consider a claim involving the failure to deposit a monetary penalty in the Fund. 15 U.S.C. § 78u-6(f).

Congress did not intend to otherwise allow access to federal courts under the statute").

Still more support for the Court's conclusion can be found in 15 U.S.C. § 78u-6(h)(1)(B)(i).  This provision explicitly creates a private cause of action protecting employees from discharge or retaliation for engaging in protected whistleblowing activities.  *See Egan* v. *TradingScreen, Inc.*, No. 10 Civ. 8202 (LBS), 2011 WL 1672066, at *3 (S.D.N.Y. May 4, 2011) ("[T]he statute also contains a private cause of action for whistleblowers alleging retaliatory discharge or other discrimination.").  Given the existence of an explicit private cause of action to enforce certain portions of Dodd-Frank, there is no basis to infer a private cause of action for those portions of the Act that are not covered, including § 78u-6(g).  That is, the "'explicit provision of a private right of action to enforce one section of a statute suggests that omission of any explicit private right to enforce other sections was intentional.'"  *Bellikoff*, 481 F.3d at 116 (quoting *Olmsted*, 283 F.3d at 433); *see also Cohen*, 622 F.3d at 194 ("The inclusion of a specific provision [creating a private cause of action] elsewhere in the statute suggests that omission of any explicit private right to enforce other sections was intentional." (internal citations and quotation marks omitted)).

Finally, Plaintiff has not identified, and the Court has not found, any authority supporting the existence of a private cause of action to enforce § 78u-6(g).  *See Jordan*, 2015 WL 1000058, at *6 (noting that the plaintiff failed to cite, and the court similarly could not locate, any authority that the statutes at issue created a private cause of action).  To the contrary, Defendants have cited

16

several cases in which courts have refused to read private causes of action into provisions of Dodd-Frank.  (*See* Def. Br. 9 (citing, among other cases, *Diena* v. *Certified Credit & Collection Bureau, Inc.*, No. 14 Civ. 769 (AET), 2015 WL 570247, at *2 (D.N.J. Feb. 11, 2015) ("Plaintiff offers no statutory basis for the existence of a private right of action under the Dodd-Frank Act[.]"); *Levine* v. *Entrust Grp., Inc.*, No. 12 Civ. 3959 (WHA), 2013 WL 1320498, at *7 (N.D. Cal. Apr. 1, 2013) ("Under the Dodd-Frank Act, the Court's research can find no private right of action.")).  In sum, Plaintiff has not overcome the presumption against implied private causes of action because § 78u-6's text and structure do not yield a clear manifestation of Congressional intent to create such a right.

### b.    The Court Lacks Subject Matter Jurisdiction over Plaintiff's Claim of Entitlement to a Whistleblower Award

Liberally construing the Amended Complaint, the Court discerns a second claim under Dodd-Frank, namely, that Defendants failed to grant Plaintiff a whistleblower award in violation of the Act, thereby entitling him to damages in an amount equivalent to the contemplated award.  (Am. Compl. ¶¶ 1, 25).[9]  Assuming for purposes of this motion that Plaintiff was entitled to

---

[9]    To discern this claim, the Court has most liberally construed the allegations in the Amended Complaint and Plaintiff's opposition memorandum, as required by the Second Circuit.  *See Cruz*, 202 F.3d at 597.  In so doing, the Court recognizes the tension between portions of Plaintiff's submissions that suggest that Plaintiff has in fact been deprived of a whistleblower award, and other portions that suggest merely that his ability to apply for an award has been impinged upon.  (*See, e.g.*, Am. Compl. ¶ 23 ("After these action[s] are taken, Plaintiff can file[] a claim against the fund[.]"); Pl. Opp. 5 ("[P]laintiff ha[s] suffered a future loss of an award[.]")).  To the extent Plaintiff is claiming only that he has been impeded in his efforts to file a claim for and/or obtain a whistleblower award, issues of both ripeness and standing would seem to foreclose this claim.  *See generally New York Bankers Ass'n, Inc.* v. *City of New York*, No. 13 Civ. 7212 (KPF), 2014 WL 4435427 (S.D.N.Y. Sept. 9, 2014).  For purposes of resolving this

17

such an award and had been deprived of it by the SEC, the Court nonetheless must dismiss his Dodd-Frank claim, inasmuch as the Court lacks subject matter jurisdiction to resolve the matter.

As previously noted, Dodd-Frank provides that any determination concerning "whether, to whom, or in what amount to make awards, shall be in the discretion of the Commission."  15 U.S.C. § 78u-6(f).  The Commission's determinations, with an exception that is not applicable here, are reviewable by the "appropriate court of appeals of the United States[.]"  *Id.*  Thus, Dodd-Frank vests the relevant United States Courts of Appeals with the exclusive jurisdiction to review any claim relating to a whistleblower award.  *See Hudes* v. *Aetna Life Ins. Co.*, 806 F. Supp. 2d 180, 191 (D.D.C. 2011) ("Any appeals of such determinations are to be made not to this Court, but rather directly to the appropriate U.S. Court of Appeals."), *aff'd*, 493 F. App'x 107 (D.C. Cir. 2012) (per curiam).  In consequence, this Court lacks subject matter jurisdiction to determine any claim that is contingent on the conclusion that Plaintiff was in fact a whistleblower under Dodd-Frank.  *Cf. In re F.C.C.*, 217 F.3d 125, 131 (2d Cir. 2000) ("We recognized that pursuant to 28 U.S.C. § 2342 and 47 U.S.C. § 402, review of the FCC's regulatory decisions and orders is entrusted solely to the federal courts of appeals and is therefore outside the jurisdiction of the bankruptcy and district courts.").  For this reason as well, Plaintiff's Dodd-Frank claims must be dismissed.

---

motion, the Court has focused on other portions of Plaintiff's submissions that suggest that he has in fact been deprived of an award.

**C.    Plaintiff's Fifth Amendment Claims Must Be Dismissed**

**1.    Applicable Law**

In addition to his Dodd-Frank claims, Plaintiff advances several claims for violations of his rights under the Due Process Clause of the Fifth Amendment. In *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized a private cause of action to sue federal officials, in their individual capacities, for violations of certain constitutionally protected rights. *See M.E.S., Inc.* v. *Snell*, 712 F.3d 666, 671 (2d Cir. 2013) (stating that in *Bivens*, the "Supreme Court recognized as implicit in certain constitutionally protected rights a federal claim for money damages against federal officials, sued in their individual capacities, for violations of those rights"); *accord Arar* v. *Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (en banc).  In essence, a *Bivens* claim provides "a judicially-created remedy stemming directly from the Constitution itself."  *Id.* (citing *Bivens*, 403 U.S. at 397).

The Second Circuit has described a *Bivens* claim as an extraordinary remedy, and has cautioned against applying it in "new contexts," a term discussed further in this section.  *See Arar*, 585 F.3d at 571 ("[T]he Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts.'" (quoting *Corr. Servs. Corp.* v. *Malesko*, 534 U.S. 61, 69 (2001))); *see also Snell*, 712 F.3d at 671 ("Precisely because *Bivens* is a judicially created remedy, however, federal courts have been reluctant to recognize such implied relief."); *Dotson* v. *Griesa*, 398 F.3d

19

156, 166 (2d Cir. 2005) ("Because a *Bivens* action is a judicially created remedy, however, courts proceed cautiously in extending such implied relief[.]").  In fact, "since *Bivens*, the Supreme Court has extended it twice only: in the context of an employment discrimination claim in violation of the Due Process Clause…; and in the context of an Eighth Amendment violation by prison officials[.]"  *Arar*, 585 F.3d at 571; *see also Wilkie* v. *Robbins,* 551 U.S. 537, 550 (2007) (collecting cases where the Court has refused to extend *Bivens*).

In determining whether to extend *Bivens* to a new context, courts employ a two-step methodology.  *See Turkmen* v. *Hasty*, 789 F.3d 218, 234 (2d Cir. 2015) ("In *Arar*, we outlined a two-step process for determining whether a *Bivens* remedy is available.").  First, the court must analyze whether the claim at issue "extend[s] *Bivens* into a new context."  *Id.*  Only after answering this question in the affirmative does the court proceed to step two.  *Id.*

In the *Bivens* setting, the Second Circuit has construed the word "context" as "reflect[ing] a potentially recurring scenario that has similar legal and factual components."  *Arar*, 585 F.3d at 572.  Despite this guidance, determining the context of a cause of action "can be tricky."  *Turkmen*, 789 F.3d at 234.  The Second Circuit recently sought to elucidate the issue by distilling the context analysis into two discrete components: the "rights injured" and the "mechanism of the injury."  *Id.*[10]  In that analysis, a claim arises in an

_____

[10]     The Court notes that the definition of context articulated in *Turkmen* was the subject of a vigorous dissent that raised numerous thought-provoking issues.  *See Turkmen*, 789 F.3d at 268 (Raggi, *J.*, dissenting).  This Court is, of course, bound to follow the

existing (i.e., a "not-new") context when it involves the deprivation of a constitutional right — "the rights injured" — by means — "the mechanism of injury" — that have been previously recognized as implicating *Bivens*. *Id.* at 235 (explaining that this analysis of "context takes account of both the rights injured (here, substantive due process and equal protection rights) and the mechanism of injury (punitive conditions without sufficient cause)").

After determining that a claim arises in a new context, the second step in the *Bivens* methodology applies a different two-pronged test to assess whether *Bivens* should be extended to a new situation. *See Arar*, 585 F.3d at 572 (recognition of a new *Bivens* claim involves "two-part inquiry"); *Snell*, 712 F.3d at 671 ("As the Supreme Court recently explained, 'consideration of a *Bivens* request follows a familiar sequence' that involves two inquiries[.]" (quoting *Wilkie*, 551 U.S. at 550)). In the first prong, the court inquires "whether there is any alternative, existing process for protecting the affected interest that amounts to a convincing reason for the Judicial Branch to refrain from providing a new damages remedy." *Snell*, 712 F.3d at 671 (internal quotation marks, citations, and alterations omitted). The second prong requires the court to analyze "whether, even in the absence of such an alternative, any special factors counsel hesitation before authorizing a new kind of federal litigation." *Id.* (internal quotation marks, citations, and alterations omitted).

---

analysis established by the majority in *Turkmen*. Nevertheless, even were this Court to employ the more holistic approach advanced by the dissent, it would still conclude that Plaintiff's claims arise in a "new context" for purposes of *Bivens*. *Id.*

With respect to the first prong of the extension-of-*Bivens* inquiry, where Congress has established a substantial, comprehensive, and intricate remedial scheme governing the conduct at issue, courts may not create a new remedy using the procedural vehicle of a *Bivens* action. *See Snell*, 712 F.3d at 671-72 ("With respect to the first of these inquiries, the Supreme Court has stated that if the conduct at issue already is 'governed by comprehensive procedural and substantive provisions [of law] giving meaningful remedies against the United States,' then it is 'inappropriate' for courts 'to supplement that regulatory scheme with a new judicial remedy.'" (quoting *Bush* v. *Lucas*, 462 U.S. 367, 368 (1983) (alterations in *Snell*)); *Arar*, 585 F.3d at 573 ("In light of the complexity of the remedial scheme Congress has created (and frequently amended), we would ordinarily draw a strong inference that Congress intended the judiciary to stay its hand and refrain from creating a *Bivens* action in this context."). Even where a comprehensive statutory regime does not provide complete relief, courts have been hesitant to craft a judicial remedy via a *Bivens* action. *Snell*, 712 F.3d at 672 ("The fact that such a remedial scheme does 'not provide complete relief for the plaintiff' warrants no different conclusion." (quoting *Lucas*, 462 U.S. at 388)). Ultimately, when faced with "a comprehensive scheme, federal courts will decline to infer 'new substantive legal liability without legislative aid,' mindful 'that Congress is in a better position to decide whether or not the public interest would be served by creating it.'" *Snell*, 712 F.3d at 672 (quoting *Lucas*, 462 U.S. at 390).

### 2.   Analysis

The Amended Complaint alleges that "Defendants violated Plaintiff['s] Fifth Amendment rights by depriving Plaintiff of property, privileges and due process of law."  (Am. Compl. ¶ 25).  Construing the Amended Complaint liberally, Plaintiff alleges two distinct Fifth Amendment claims.  (*Id.* at ¶¶ 24- 25).  First, he claims that Defendants' failure to transfer the AgFeed Sanction to the Fund deprived him of his due process rights in a whistleblower award. (*Id.* at ¶¶ 1, 25; Pl. Opp. 5).  Second, Plaintiff appears to allege that he was in fact a whistleblower under Dodd-Frank, and that Defendants' failure to provide him with an award, irrespective of the disposition of the AgFeed Sanction, violated his due process rights.  (*See* Am. Compl. ¶ 25).  As detailed in the remainder of this section, these claims must also be dismissed.

### a.   The SEC's Failure to Transfer the AgFeed Sanction to the Fund Is Not Cognizable Under *Bivens*

Turning first to Plaintiff's assertion that Defendants' failure to transfer the AgFeed Sanction violated the Due Process Clause of the Fifth Amendment by depriving Plaintiff of the ability to claim a whistleblower award, the Court concludes that this claim arises in a new context that is ultimately not cognizable under *Bivens*.  Preliminarily, the Court assumes both that the failure to transfer the AgFeed Sanction is chargeable to Defendants *and* that the action results in the deprivation of a cognizable property interest.  *See Furlong* v. *Shalala*, 156 F.3d 384, 393 (2d Cir. 1998) ("To establish entitlement to due process protection under the Fifth Amendment, [plaintiffs] must first demonstrate they possess a property interest of constitutional dimension.").

Applying the framework articulated in *Turkmen* to the Amended Complaint, the Court finds that any rights of Plaintiff that were injured by the allegedly improper disbursement of the AgFeed Sanction flow from the Due Process Clause of the Fifth Amendment.  Although the Supreme Court has extended *Bivens* claims to certain due process violations, it has expressly refused to do so on a wholesale basis.  *See F.D.I.C.* v. *Meyer*, 510 U.S. 471, 484 n.9 (1994) ("[A] *Bivens* action alleging a violation of the Due Process Clause of the Fifth Amendment may be appropriate in some contexts, but not in others.").  The key factor in determining whether an alleged due process violation rises to the level of an actionable *Bivens* claim is the mechanism of injury.  *See Turkmen*, 789 F.3d at 235 n.15.

Here, the purported injury to Plaintiff's Fifth Amendment rights resulted from Defendants' failure to transfer the AgFeed Sanction to the Fund, which in turn impaired Plaintiff's ability to recover a whistleblower award.  Distilled to *Turkmen* parlance, the "mechanism of injury" in this case essentially involves the alleged deprivation of a statutorily conferred benefit.  In general, courts have refused to extend *Bivens* to due process cases that are premised on an improper deprivation of a statutorily conferred benefit.  *See Schweiker* v. *Chilicky*, 487 U.S. 412, 429 (1988) (refusing to extend *Bivens* to Fifth Amendment due process claim based on denial of social security benefits); *Sugrue* v. *Derwinski*, 26 F.3d 8, 12 (2d Cir. 1994) (same, where claims based on acts and omissions involving the assignment of a disability rating, and hence a benefit level under Veterans' Benefits statute); *Storms* v. *United States*, No. 13

24

Civ. 811 (MKB), 2015 WL 1196592, at *15 (E.D.N.Y. Mar. 16, 2015) (same, where claims based on conduct that allegedly precluded plaintiffs from participating in government programs set aside for qualified veteran-owned businesses).[11]

Conversely, the mechanism of injury in the instant action is materially distinguishable from those case in which courts have recognized a *Bivens* claim for Fifth Amendment due process violations.  Such cases have involved, for example, gender discrimination and punitive prison conditions — conduct that is readily distinguishable from the deprivation of a statutory benefit.  *See Davis* v. *Passman*, 442 U.S. 228, 248-49 (1979) (recognizing *Bivens* action under equal protection component of Due Process Clause in the context of gender discrimination in employment); *Turkmen*, 789 F.3d at 235 (same, where cause of action premised on punitive conditions of imprisonment without sufficient cause).  Accordingly, the Court finds that Plaintiff's claim based on the failure to transfer the AgFeed Sanction to the Fund presents a new context.

Having so found, the Court must decide whether to extend *Bivens* to this claim.  It will not.  In so deciding, the Court notes that Congress has implemented a substantial, comprehensive, and intricate remedial scheme governing the conduct at issue.  Specifically, the judicial review provisions of

---

[11]   The Court notes that the reasoning in *Schweiker*, *Sugrue*, and *Storms*, if adopted by the Court, would very likely foreclose Plaintiff's Fifth Amendment claim, as these cases suggest that there is no *Bivens* remedy for due process claims premised on the deprivation of a right to a statutorily conferred benefit.  Nevertheless, since the benefit at issue here — a whistleblower award — is conceivably distinct from the benefits in those cases, the Court will analyze whether *Bivens* should be extended to cover Plaintiff's claim.

the Administrative Procedure Act ("APA") set forth in 5 U.S.C. §§ 701-706 "allow any person adversely affected or aggrieved by agency action to obtain judicial review thereof, so long as the decision challenged represents a final agency action for which there is no other adequate remedy in a court." *Webster* v. *Doe*, 486 U.S. 592, 599 (1988).  Although the Second Circuit has not explicitly considered the issue, a number of other courts have concluded that "the availability of review under the APA precludes a *Bivens* claim." *Storms*, 2015 WL 1196592, at *14 (collecting cases).  This Court agrees that "the sheer breadth and comprehensiveness of the APA counsels against" extending *Bivens* to a claim that falls within the purview of the statute. *Id.*  Specifically, the design of and remedies afforded by the APA raise "the inference that Congress 'expected the Judiciary to stay its *Bivens* hand' and provides 'a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages[.]'" *W. Radio Servs. Co.* v. *U.S. Forest Serv.*, 578 F.3d 1116, 1125 (9th Cir. 2009) (quoting *Wilkie*, 551 U.S. at 550).

Here, the heart of Plaintiff's claim is based on an action by the SEC, namely, the deposit of the AgFeed Sanction with the Bankruptcy Court rather than in the Fund.  This conduct falls within the purview of the APA, and the Court will therefore not extend *Bivens* to Plaintiff's claim.  In sum, Plaintiff's Fifth Amendment claim premised on the distribution of the AgFeed Sanction must be dismissed.

### b.   The SEC's Failure to Grant Plaintiff a Whistleblower Award Is Not Cognizable Under *Bivens*

As noted, the Court also construes the Amended Complaint liberally to find that Plaintiff has alleged a second Fifth Amendment violation against Defendants, this time for not granting him a whistleblower award in connection with the Enforcement Action.[12]  Again applying the *Turkmen* framework, the Court first considers whether Plaintiff's claim arises in a new *Bivens* context. As with the claim relating to the transfer of the AgFeed Sanction, the rights of Plaintiff allegedly injured by the failure to confer a whistleblower award arise under the Fifth Amendment's Due Process Clause.  And as discussed above, violations of the Due Process Clause do not categorically rise to the level of a *Bivens* claim.  Thus, like the AgFeed Sanction claim, the mechanism of injury determines whether Plaintiff can assert a *Bivens* claim based on the fact that he did not receive a whistleblower award.

Plaintiff's claim is best understood to allege that Defendants violated his due process rights by not granting him a whistleblower award under the system established by Dodd-Frank and its associated regulations.  Thus, the mechanism of injury involves the denial of a statutorily conferred benefit, which, for the reasons set forth above, implicates a new context.

For this claim, too, the Court will not extend *Bivens*, because Congress has implemented a similarly comprehensive remedial scheme governing the

---

[12]   This claim relies on the same factual predicate as Plaintiff's Dodd-Frank claim. Accordingly, it too implicates the concerns, stemming from the internal contradictions in the Plaintiff's submissions, that Plaintiff is seeking redress for an award for which he has not applied. *See supra*, n.9.

conduct at issue.  Specifically, § 922(a) of the Act establishes the statutory framework for Dodd-Frank's whistleblower program.  *See* 15 U.S.C. § 78u-6(a)-(d).  Furthermore, this section provides the Commission with "the authority to issue such rules and regulations as may be necessary or appropriate to implement the provisions of this section[.]"  *Id.* § 78u-6(j).  Pursuant to this legislative directive, the SEC has promulgated detailed procedures for determining whether a party is entitled to a whistleblower award under Dodd-Frank.  *See* 17 C.F.R. § 240.21F-10.

Among other things, the regulations require a party seeking a whistleblower award to complete a standard form.  17 C.F.R. § 240.21F-10(b).  After the administrative or judicial action that produced the whistleblower award has become final, the staff designated by the Director of the Division of Enforcement (the "Claims Review Staff") evaluates all timely whistleblower claims.  *Id.* § 240.21F-10(d).[13]  At the conclusion of the evaluative process, the Office of the Whistleblower sends out a "Preliminary Determination" setting forth a preliminary assessment as to whether the whistleblower claim should be allowed or denied.  *Id.*

An applicant for a whistleblower award may contest this Preliminary Determination by submitting a written response to the Office of the Whistleblower, articulating the grounds for any objection to either the denial of

---

[13]     In the instant matter, the SEC issued a Notice of Covered Action on November 26, 2014, advising prospective claimants under Dodd-Frank's whistleblower provisions that they had 90 days, or until February 24, 2015, to submit a claim to the SEC.  *See* SEC Notice No. 2014-123, http://www.sec.gov/about/offices/owb/owb-awards/2014-nocas.shtml (last viewed Sept. 24, 2015).

an award or the proposed amount of an award.  17 C.F.R. § 240.21F-10(e).  A

whistleblower contesting an award is also provided with procedural

mechanisms for collecting information to support his or her challenge to the

Claims Review Staff's determination.  *Id.* § 240.21F-10(e)(1)(i)-(ii).  If a timely

objection is filed, the Claims Review Staff "will consider the issues and grounds

advanced … along with any supporting documentation provided[.]"  *Id.*

§ 240.21F-10(g).

　　　After reviewing these materials, the Claims Review Staff will issue a

Proposed Final Determination.  17 C.F.R. § 240.21F-10(g).  The Office of the

Whistleblower then notifies the Commission of each Proposed Final

Determination, and within 30 days any Commissioner may request that the

Commission review the Proposed Final Determination.  *Id.* § 240.21F-10(h).

Finally, Dodd-Frank and SEC regulations provide that "a determination of

whether or to whom to make an award may be appealed within 30 days after

the Commission issues its final decision to the United States Court of Appeals

for the District of Columbia Circuit, or to the circuit where the aggrieved person

resides or has his principal place of business."  *Id.* § 240.21F-13(a); *see also* 15

U.S.C. § 78u-6(f).

　　　In sum, Congress and the SEC have crafted a comprehensive regulatory

scheme providing individuals with procedures for applying for whistleblower

awards, challenging the denial or amount of an award, and obtaining judicial

review of the Commission's determinations.  In the face of this comprehensive

scheme, this Court declines to extend *Bivens* to this new context.  *See Snell,*

712 F.3d at 676 (refusing to extend *Bivens* to a due process claim given the existence of a comprehensive statutory scheme covering contract disputes with the United States Government); *Tanvir* v. *Lynch*, No. 13 Civ. 6951 (RA), 2015 WL 5164869, at *12 (S.D.N.Y. Sept. 3, 2015) (concluding that since Congress had passed a comprehensive scheme governing the operation of the Transportation Safety Administration's "no-fly" list, plaintiffs could not state *Bivens* claim for violations of the First Amendment).  Both of Plaintiff's Fifth Amendment Due Process Clause claims must therefore be dismissed.

**D.    Plaintiff's Claims for Misrepresentation, Concealment, and Deceit Must Be Dismissed**

### 1.    Applicable Law

In addition to his federal claims, Plaintiff brings pendent claims against Defendants for what he alleges to be acts of misrepresentation, concealment, and deceit.  (Am. Compl. ¶¶ 26-28).  To resolve these claims, the Court must consider the circumstances under which SEC officials and employees may be sued.

The United States "is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *Liranzo* v. *United States*, 690 F.3d 78, 84 (2d Cir. 2012) (internal alterations, quotation marks, and citations omitted).  The Federal Tort Claim Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, effects "'a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances.'"  *Id.* at 84-85 (quoting *Hamm* v. *United States*, 483 F.3d 135, 137 (2d Cir. 2007)).  The

United States has not, however, waived sovereign immunity for certain intentional torts, including claims arising out of "misrepresentation" or "deceit." 28 U.S.C. § 2680(h); *see also Millbrook* v. *United States*, 133 S. Ct. 1441, 1442 (2013) ("One such exception, relating to intentional torts, preserves the Government's immunity from suit for '[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander,  misrepresentation, deceit, or interference with contract rights.'" (quoting 28 U.S.C. § 2680(h))); *Dorking Genetics* v. *United States*, 76 F.3d 1261, 1264 (2d Cir. 1996) (noting that the FTCA's "waiver of sovereign immunity" does not apply to claims arising out of misrepresentations).

The FTCA provides that a suit against the United States is the exclusive remedy for a nonconstitutional tort committed by a federal agent or employee acting within the scope of his or her employment.  *See Hui* v. *Castaneda*, 559 U.S. 799, 806 (2010) ("The Westfall Act amended the FTCA to make its remedy against the United States the exclusive remedy for most claims against Government employees arising out of their official conduct."); *Castro* v. *United States*, 34 F.3d 106, 110 (2d Cir. 1994) (noting that "a claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA"); *Rivera* v. *United States*, 928 F.2d 592, 608 (2d Cir. 1991) (the FTCA provides that a "suit against the United States is the exclusive remedy for a suit for damages for injury or loss of property 'resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the

31

scope of his office or employment'" (quoting 28 U.S.C. § 2679(b)(1))).  In effect,

the FTCA "provides government employees acting within the scope of their

employment with absolute immunity from suit."  *McDowall* v. *Metro. Corr. Ctr.*,

No. 08 Civ. 8329 (BSJ), 2010 WL 649744, at *3 (S.D.N.Y. Feb. 22, 2010); *see*

*also Lipkin* v. *U.S. S.E.C.*, 468 F. Supp. 2d 614, 617 (S.D.N.Y. 2006) ("To the

extent that this action is based on claims that sound in common-law tort, the

FTCA provides federal employees with absolute immunity."); *Rambarrat ex rel.*

*Rambarrat* v. *United States*, 347 F. Supp. 2d 6, 8 (S.D.N.Y. 2004) ("Section

2679(b)(1) provides Government agencies and employees with absolute

immunity against common-law tort claims by requiring that the United States

be substituted as a defendant in their stead.").

To that end, the FTCA establishes a mechanism for substituting the

United States as a party for a non-constitutional tort asserted against a

government employee.  *Lipkin*, 468 F. Supp. 2d at 622.  Specifically, it provides

that:

> Upon certification by the Attorney General that the
> defendant employee was acting within the scope of his
> office or employment at the time of the incident out of
> which the claim arose, any civil action or proceeding
> commenced upon such claim ... shall be deemed an
> action against the United States under the provisions of
> this title and all references thereto, and the United
> States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).  In most cases, "upon the Attorney General's

certification, the employee is dismissed from the action, and the United States

is substituted as defendant in place of the employee." *Osborn* v. *Haley*, 549
U.S. 225, 230 (2007).

That said, "the Attorney General's certification is 'the first, but not the
final word' on whether the federal officer is immune from suit and,
correlatively, whether the United States is properly substituted as defendant."
*Osborn*, 549 U.S. at 246 (quoting *Gutierrez de Martinez* v. *Lamagno*, 515 U.S.
417, 432 (1995)).  A plaintiff may challenge the Government's scope of
employment determination under § 2679(d)(1) by alleging with "particularity
facts relevant to the scope of employment issue." *Aryai* v. *Forfeiture Support
Assocs.*, 25 F. Supp. 3d 376, 388 (S.D.N.Y. 2012).  If the plaintiff satisfies this
initial burden, the Court will then conduct a *de novo* review of the certification,
applying "state law principles pertaining to when intentional torts conduct falls
within the scope of a party's employment." *Bello* v. *United States*, 93 F. App'x
288, 289 (2d Cir. 2004) (summary order).  However, the plaintiff ultimately
bears the burden of showing that certification was improper.  *See Lipkin*, 468
F. Supp. 2d at 623.

### 2.    Analysis

The Amended Complaint alleges that the "SEC Officials [through] public
advertisements falsely and deliberately misrepresented and deceived the
Plaintiff into believing that an award awaits him if he complies with the
Whistleblower laws as enacted by Congress." (Am. Compl. ¶ 28).  According to
Plaintiff, the "SEC Officials" purportedly "had no intentions of paying Plaintiff
any award." (*Id.*).  In his opposition to the motion to dismiss, Plaintiff

elaborates that his claims concerning Defendants' "misrepresentation[s]," "concealment[s]," and "deceit" extend to the AgFeed Notice of Covered Action that the SEC released on November 26, 2014. (Pl. Opp. 5). Specifically, Plaintiff claims that the Notice's failure to disclose the actual amount of the AgFeed Sanction misrepresented material facts, concealed material facts, and was deceitful. (*Id.*). As set forth above, Plaintiff may have insuperable ripeness and standing issues if, as certain parts of his pleadings suggest, he has not yet filed a claim for a whistleblower award. However, even assuming standing and ripeness, the Court must dismiss Count Two, because the United States has not waived sovereign immunity and because Plaintiff has not pleaded this claim with the requisite particularity.

### a.    Plaintiff's Claims Are Precluded by the FTCA

The United States Attorney for the Southern District of New York has certified, among other things, that to the extent it is determined that Defendants committed the conduct alleged in Count Two, they were acting within the scope of their employment.[14] Accordingly, unless Plaintiff alleges with particularity facts relevant to the scope of employment issue, the United States must be substituted for each Defendant with respect to Count Two. Throughout his Amended Complaint, Plaintiff asserts that he is suing each

---

[14]    The Court notes that in this case, the United States submitted the certification request in its motion rather than by formal petition. (Def. Br. 14 n.5). Courts considering the issue have held that "an express petition for certification is not required and a brief on behalf of named defendants may serve as a petition to certify that they were employees acting within the scope of their employment." *Cates* v. *Williams*, No. 08 Civ. 1529 (HB), 2009 WL 723021, at *5 (S.D.N.Y. Mar. 19, 2009); *see also Fiore* v. *Medina*, No. 11 Civ. 2264 (RJS), 2012 WL 4767143, at *5 (S.D.N.Y. Sept. 27, 2012) (quoting *Cates* with approval).

Defendant in his or her "individual and personal capacity." (*See, e.g.*, Am. Compl. Intro.).  And in his opposition, Plaintiff incants that Defendants acted "outside the scope of their employment" (Pl. Opp. 5), and, indeed, "outside their statutory authority" (*id.* at 12).  Neither the opposition papers nor the Amended Complaint, however, states with the requisite particularity the facts that are necessary to establish that Defendants were indeed acting outside of the scope of their employment at the time they engaged in the conduct underlying Count Two.

Quite to the contrary, Plaintiff's Count Two allegations against Defendants are inextricably intertwined with the issuance of official SEC statements and notices, as well as the contents of these documents.  (*See* Am. Compl. ¶ 28; Pl. Opp. 5-6).  Given the fact that these materials are, incontestably, official SEC documents, Defendants could have only issued them by virtue of their employment.  In other words, Plaintiff's claim depends on conduct — the issuance of official statements and notices — that Defendants could only have undertaken while acting within the scope of their employment.  In similar situations, courts have held that the actions taken by government employees were in the scope of their employment.  *See Logan* v. *Matveevskii*, 57 F. Supp. 3d 234, 285 (S.D.N.Y. 2014) (certification proper because "Plaintiff's allegations against the HUD Defendants seem to depend on the fact that they were" acting within the scope of their employment); *De Masi* v. *Schumer*, 608 F. Supp. 2d 516, 522 (S.D.N.Y. 2009) (certification was proper because "Plaintiff's allegations depend on Senator Schumer's status and

conduct as a United States Senator"); *Lipkin*, 468 F. Supp. 2d at 623 ("Given that the allegedly improper acts all occurred within the context of the defendants' prosecution of a civil suit against Lipkin and Shainberg, plaintiffs have not met their burden of showing that the certification was improper."). Moreover, even if there were irregularities in the statements and notices cited in Count Two, any such irregularities cannot support a finding that Defendants were acting outside the scope of their employment. *See Bello*, 93 F. App'x at 289 (state law principles govern whether government employee was acting within the scope of his or her employment); *Sagal-Cotler* v. *Bd. of Educ. of City Sch. Dist. of City of New York*, 20 N.Y.3d 671, 675 (2013) ("It is well-established that an act is within the scope of employment if it was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." (internal quotation marks omitted)).  Accordingly, the Court substitutes the United States for each Defendant with respect to Count Two.

After substitution, the Court must consider whether Plaintiff may maintain Count Two against the United States.  He may not.  As noted, Count Two is based on allegations of misrepresentation, concealment, deceit, and fraud, all of which are barred by the doctrine of sovereign immunity.  The FTCA specifically provides that its waiver of sovereign immunity does not apply to "any claim arising out of … misrepresentation [or] deceit."  28 U.S.C. § 2680(h); *see also Millbrook*, 133 S. Ct. at 1442.  Moreover, Plaintiff's claim for concealment fails, as it "fall[s] within the 'misrepresentation' or 'deceit' exceptions to the FTCA." *Lipkin*, 468 F. Supp. 2d at 624.  Finally, to the extent

36

that the Amended Complaint alleges that Defendants engaged in fraud, this claim also falls within the purview of the FTCA, and ultimately founders on the doctrine of sovereign immunity. *See id.* at 624 n.2 ("*Edelman* v. *Fed. Hous. Admin.*, 382 F.2d 594, 597 (2d Cir. 1967), makes clear that suits for fraud are barred under the FTCA by virtue of the exclusion for suits arising out of 'misrepresentation.'").

Plaintiff seeks to avoid dismissal under the FTCA by repeatedly and forcefully asserting that he is not alleging a claim under that statute. (*See* Pl. Opp. 9-10, 12-13). Given the specific conduct alleged in Count Two, however, these assertions cannot salvage Plaintiff's claims. As it happens, Defendants "enjoy absolute immunity from tort claims arising out of acts undertaken in the course of their official duties." *De Masi*, 608 F. Supp. 2d at 520. By disavowing the FTCA, Plaintiff is foreclosing his only potential path for asserting a tort claim based on Defendants' alleged conduct.

### b. Plaintiff Has Failed to Plead His Claims with Particularity

In point of fact, two pleading deficiencies beset Plaintiff's Count Two claim. The first, discussed in the preceding section, is that Plaintiff has not (and, it would appear, cannot) plead sufficient facts to suggest that Defendants were acting outside of the scope of their employment. Given the explicit provisions of the FTCA, this pleading deficiency is fatal to Plaintiff's claim. The second, separate deficiency, discussed in this section, is that Plaintiff has failed to plead his claims with the particularity required by Fed. R. Civ. P. 9(b).

Count Two as pleaded in the Amended Complaint generally alleges that the "SEC Officials [through] public advertisements falsely and deliberately misrepresented and deceived the Plaintiff." (Am. Compl. ¶ 28). Plaintiff then clarifies in his opposition to the instant motion that "Defendants" engaged in "a fraud" and "a deceit" with respect to the AgFeed whistleblower notices that were published on the SEC's website. (Pl. Opp. 5-6). Because these allegations sound in fraud and intentional misrepresentations, they are governed by Rule 9(b)'s heightened pleading requirement. *See Cohen* v. *S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) ("Claims that sound in fraud are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b), which requires that averments of fraud be 'state[d] with particularity.' To satisfy this requirement, a complaint must 'specify the time, place, speaker, and content of the alleged misrepresentations,' 'explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" (internal quotation marks omitted; alterations in *Cohen*)).

Significantly, Rule 9(b) requires that "'when fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of by each defendant. A complaint may not simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b).'" *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 641 (S.D.N.Y. 2007) (quoting *Rich* v. *Maidstone Fin., Inc.*, No. 98 Civ. 2569 (DAB), 2001 WL 286757, at *6 (S.D.N.Y. Mar. 23, 2001)). Rather "where multiple defendants are asked to respond to

allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation" in the conduct. *Nasik Breeding & Research Farm Ltd.* v. *Merck & Co.*, 165 F. Supp. 2d 514, 529 (S.D.N.Y. 2001).[15] Here, neither the Amended Complaint nor Plaintiff's opposition submission explain what role any of the Defendants played in preparing the SEC documents underpinning the fraud and misrepresentation claims. Instead, the Amended Complaint simply avers that the "SEC Officials" "falsely and deliberately misrepresented and deceived Plaintiff." (Am. Compl. ¶ 28). In a similarly terse fashion, the opposition alleges merely that "Defendants" perpetrated a "fraud" and "deceit." (Pl. Opp. 5-6). As such, Count Two must be dismissed in accordance with Rule 9(b). *See Bezuszka* v. *L.A. Models, Inc.*, No. 04 Civ. 7703 (NRB), 2006 WL 770526, at *13 (S.D.N.Y. Mar. 24, 2006) ("Beyond alleging that misrepresentations were made, the Complaint fails to state who made the representations. As noted above, in a multi-defendant case, generally alleging that the 'defendants' engaged in fraud falls short of the heightened standard of Rule 9(b)."); *Simon* v. *Castello*, 172 F.R.D. 103, 106 (S.D.N.Y. 1997) (complaint replete with "sweeping references to defendants," but devoid of any specific references to either defendant, failed to satisfy Rule 9(b)).[16]

---

[15]   The Court notes that Plaintiff has provided no basis for applying the group pleading doctrine, "an exception to the requirement that a complaint identify each defendant's fraudulent acts," to the facts of this case. *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 398 F. Supp. 2d 244, 250 (S.D.N.Y. 2005); *see also City of Pontiac Gen. Employees' Ret. Sys.* v. *Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 373 (S.D.N.Y. 2012) (noting that group pleading exception is extremely limited in scope).

[16]   The Court also notes serious deficiencies in the allegations regarding the misstatements or omissions. For starters, Plaintiff alleges in the Amended Complaint that the SEC's public statements caused him to believe that he was entitled to a whistleblower award that the SEC had no intention of awarding, but (perhaps because he has not yet applied

### E.     Plaintiff's Unjust Enrichment Claim Must Be Dismissed

### 1.     Applicable Law

Count Three of the Amended Complaint alleges a claim for unjust

enrichment.  In order to state a claim for unjust enrichment under New York

law, a plaintiff must allege that "'[i] defendant was enriched, [ii] at plaintiff's

expense, and [iii] equity and good conscience militate against permitting

defendant to retain what plaintiff is seeking to recover[.]'"  *Diesel Props S.r.l.* v.

*Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (quoting *Briarpatch*

*Ltd.* v. *Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)).[17]  Notably, in

order to state an unjust enrichment claim, a plaintiff must show that the

defendant actually received a benefit.  *Legurnic* v. *Ciccone*, 63 F. Supp. 3d 241,

248 (E.D.N.Y. 2014) ("Therefore, if the Plaintiff fails to show that the Defendant

received a benefit, there can be no liability for unjust enrichment."); *see also*

*Chevron Corp.* v. *Donziger*, 871 F. Supp. 2d 229, 260 (S.D.N.Y. 2012) ("A

complaint does not state a cause of action in unjust enrichment if it fails to

---

for and/or been denied such an award), he fails to identify precisely what is false or misleading in any of these statements.  There are similarly no allegations concerning materiality or reliance.  And for the one example provided in his opposition papers, the failure to include the amount of the disgorgement award in the Notice of Covered Action, Plaintiff fails to explain how this omission rendered the Notice misleading.

[17]    Neither side has identified the state law applicable to the unjust enrichment claim. However, the law of unjust enrichment in New York and in the District of Columbia is "substantially the same." *Minebea Co.* v. *Papst*, 444 F. Supp. 2d 68, 186 n.92 (D.D.C. 2006).  Given the parties' silence on the issue and the similarities between the law in New York and the District of Columbia, the Court applies New York's law in analyzing Plaintiff's unjust enrichment claim.  *See Johnson* v. *Priceline.com, Inc.*, 711 F.3d 271, 276 n.2 (2d Cir. 2013) ("[C]ourts sitting in diversity may properly rely on the forum state's law where neither party asserts that another jurisdiction's law meaningfully differs."); *Lantheus Med. Imaging, Inc.* v. *Zurich Am. Ins. Co.*, No. 10 Civ. 9371 (KPF), 2015 WL 1914319, at *19 n.9 (S.D.N.Y. Apr. 28, 2015) (relying on New York state law where neither party asserted a meaningful difference between the potentially applicable state laws).

allege that defendant received something of value which belongs to the plaintiff.").  Such a benefit must be both "specific" and "direct."  *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (evidence did "not establish the specific and direct benefit necessary to support an unjust enrichment claim").

### 2.    Analysis

Plaintiff alleges in the Amended Complaint that "SEC Officials" diverted the AgFeed Sanction to the bankruptcy proceeding in order to enrich their "Lawyer[] friends" who were "involved in the Agfeed case[.]"  (Am. Compl. ¶ 30).  In his opposition, Plaintiff speculates that "future benefits [may be] accruing" to Defendants because the AgFeed Sanction was distributed in that manner.  (Pl. Opp. 6; *see also id.* at 13 ("Defendants['] actions were beyond the law and future benefits may [accrue] to each of them.")).

As an initial matter, Plaintiff's allegations aver that the "Lawyer friends," rather than Defendants, received a benefit.  In so doing, Plaintiff fails to plead that any Defendant was actually enriched.  *See Legurnic*, 63 F. Supp. 3d at 248 (noting that in order to succeed on an unjust enrichment claim, plaintiff must show that defendant received a benefit); *Washington* v. *Kellwood Co.*, No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *11 (S.D.N.Y. Mar. 24, 2009) (dismissing unjust enrichment claim because "nowhere do Plaintiffs explain how Defendant was enriched, how the alleged enrichment came at Plaintiffs' expense, or why this alleged enrichment was inequitable"); *Am. Fin. Int'l Grp.-Asia, L.L.C.* v. *Bennett*, No. 05 Civ. 8988 (GEL), 2007 WL 1732427, at *3 (S.D.N.Y. June 14, 2007) (dismissing unjust enrichment claim where "nothing

in the complaint indicates that defendants received any personal benefit");

*Mina Inv. Holdings, Ltd.* v. *Lefkowitz*, 51 F. Supp. 2d 486, 490 (S.D.N.Y. 1999)

(motion to dismiss granted where the complaint "fails to provide any

explanation of the nature of [defendant's] enrichment").

At most, Plaintiff can allege only that "future benefits [may be] accruing"

to the Defendants.  (*See* Pl. Opp. 6, 13).  An allegation premised on an

unnamed benefit that may accrue in the future, however, is too slender a reed

on which to premise a claim of unjust enrichment.  *See Kaye*, 202 F.3d at 616

(evidence did "not establish the specific and direct benefit necessary to support

an unjust enrichment claim"); *Mina Inv. Holdings, Ltd.*, 51 F. Supp. 2d at 490

(finding that "Plaintiffs' allegation that [defendant] 'may' become unjustly

enriched in the future" is insufficient to state an unjust enrichment claim).

Accordingly, Count Three must be dismissed for failure to state a claim.

## F.    Plaintiff's Claim for Attorney's Fees Must Be Dismissed

Finally, in Count Four of the Amended Complaint, Plaintiff requests that

Defendants pay his reasonable attorney's fees.  (Am. Compl. ¶ 32).  To the

extent Plaintiff is seeking attorney's fees for himself, this claim can swiftly be

dismissed, inasmuch as a *pro se* litigant may not recover fees under § 1988.

*See Jackson* v. *County of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011)

(summary order) ("The Supreme Court has spoken clearly that a *pro se* litigant,

whether or not he is a lawyer, may not receive attorney's fees under Section

1988."); *Gordon* v. *City of New York*, No. 09 Civ. 04577 (ERK), 2015 WL

1514359, at *5 (E.D.N.Y. Apr. 3, 2015) ("Indeed, a party appearing *pro se* is not

entitled to fees under § 1988, even if she is an attorney."); *Peterson* v. *City of New York*, No. 11 Civ. 3141 (DLC), 2012 WL 75029, at *5 (S.D.N.Y. Jan. 9, 2012) ("Plaintiff's claim for attorney's fees pursuant to 42 U.S.C. § 1988 fails because, although plaintiff is an attorney, he is proceeding *pro se* and is thus not entitled to attorney's fees.").

Plaintiff counters this well-established legal principle by noting that he in fact "intends on hiring an attorney in the near future." (Pl. Opp. 13). This claim cannot salvage Count Four. Section 1988 allows for the award of reasonable attorney's fees to a "prevailing party." 42 U.S.C. § 1988. Plaintiff's substantive claims here have been dismissed, and therefore there is no basis to award attorney's fees. *Sullivan* v. *Chappius*, 711 F. Supp. 2d 279, 287 (W.D.N.Y. 2010) ("Since plaintiff's two substantive claims are thus subject to dismissal, there is no basis for his third 'cause of action' for attorney's fees, and that claim must be dismissed as well."); *Guadagni* v. *New York City Transit Auth.*, No. 08 Civ. 3163 (CPS) (SMG), 2009 WL 1910953, at *10 (E.D.N.Y. June 30, 2009) ("Because all of plaintiff's substantive claims must be dismissed as a matter of law, plaintiff's claim under § 1988 is accordingly dismissed as moot."); *Torres* v. *Hynes*, No. 99 Civ. 7117 (RR), 2000 WL 1052075, at *3 (E.D.N.Y. June 21, 2000) ("Because this court is dismissing his complaint against Ms. Garnet and Ms. Salzman in its entirety, it dismisses the § 1988 claim against these defendants as well.").

**G.     Plaintiff Will Not Be Given Leave to Replead**

Finally, the Court considers whether to permit Plaintiff to file a Second Amended Complaint.  The Court notes that Plaintiff has not sought such relief, and for this reason the remainder of this section may be superfluous.  However, the Second Circuit has noted that "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted).  The Court will therefore undertake an analysis *sua sponte*.

Given Plaintiff's *pro se* status, this Court has taken great pains to construe the allegations in the Amended Complaint as liberally as possible, as is evidenced throughout this Opinion.  The Court has even sought to bolster the allegations with the statements and arguments in Plaintiff's opposition papers.  Even granting that solicitude, the Court is confident that Plaintiff cannot surmount the many legal hurdles (to say nothing of the factual ones) outlined in this Opinion, and therefore will not grant leave to amend.  *See Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (upholding denial of leave to amend *pro se* complaint where proposed amendment would have been futile; "Repleading would thus be futile. Such a futile request to replead should be denied.").  As detailed above, the Dodd-Frank and *Bivens* claims fall on legal grounds that cannot be remedied by repleading.  As for the misrepresentation claim, Plaintiff is unable to plead facts demonstrating that the alleged conduct by Defendants was outside the scope of their employment, and he is unable to

44

plead a plausible claim in this regard with the requisite particularity.  Plaintiff's unjust enrichment claims fail as a legal matter, and would be similarly impossible to plead in accordance with *Iqbal* and *Twombly*.  Finally, Plaintiff cannot plead claims that would permit the award to him of attorney's fees.  For all of these reasons, the Amended Complaint must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is GRANTED in its entirety.  The Clerk of Court is directed to terminate the motion pending at docket entry 27, adjourn all remaining dates, and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:      September 28, 2015
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

James Regnante
66-92 Selfridge St. apt 6-H
Forest Hills, NY 11375